UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Allen T. Gregory,

       Plaintiff,

v.                                                 Case No. 25C1988

Officer Jonathan Cruz, Officer Maxx Cziske,
Officer Juan Jimenez-Gonzalez,
Officer Giles Gutowski, and
Officer Jeremiah Lewis,

       Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants, by counsel, Evan C. Goyke, City Attorney, by Meghan McCabe, Assistant City Attorney, and Joshua Cronin, Assistant City Attorney, pursuant to FRCP 12(b), bring this brief in support of a motion to dismiss on the grounds that Plaintiff's Complaint fails to state a claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555)). "Importantly, the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013); *see also Twombly*, 550 U.S. at

557 (a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Because a complaint must state a claim that is plausible on its face, "when an exhibit, 'incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.'" *Esco*, 107 F.4th at 678-79 (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). "A district court deciding a motion to dismiss, may not defy the Supreme Court's command to accept all facts in the complaint as true, and instead rely on video evidence unless the video 'utterly discredit[s]' the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts." *Esco*, 107 F.4th at 679 (citing *Scott v. Harris,* 550 U.S. 372, 380 (2007).

This Court may consider Officer Jimenez-Gonzalez's body worn camera video, Officer Cruz's body worn camera video, Officer Lewis's body worn camera video, Officer Cziske's body worn camera video, and the September 22, 2024 interview room video because they are central to Plaintiff's claims and the videos clearly contradict Plaintiff's allegations that Defendants used excessive force, violated Plaintiff's rights under the Rehabilitation Act and failed to intervene. *See* Def. Ex. 1-5.

**FACTUAL ALLEGATIONS**

On December 18, 2025, Plaintiff filed a pro se complaint in the Eastern District of Wisconsin. ECF 1. On May 7, 2026, this Court screened Plaintiff's complaint and allowed Plaintiff to proceed with the following claims:

2

**Claim 1:** Rehabilitation Act claim against Officer Jimenez- Gonzalez, Officer Cruz and Officer Lewis stemming from their interaction with Plaintiff on September 21, 2024;

**Claim 2:** Rehabilitation Act claim against Officer Cruz and Officer Cziske stemming from their interaction with Plaintiff on September 22, 2024;

**Claim 3:** Fourth Amendment claim for excessive force against Officer Jimenez-Gonzalez, Officer Cruz and Officer Lewis stemming from their interaction with Plaintiff on September 21, 2024;

**Claim 4:** Excessive force against Officer Cziske and Officer Cruz stemming from their interaction with Plaintiff on September 22, 2024;

**Claim 5:** Fourth amendment claim for failure to intervene against Officer Gutowski stemming from his interaction with Plaintiff on September 22, 2024.

**Claim 7:** Fourth Amendment claim for excessive force against unnamed officers stemming from an alleged interaction with Plaintiff on September 21, 2024; and

**Claim 8:** Rehabilitation Act claim against unnamed booking officers stemming from an alleged interaction with Plaintiff on September 21, 2024.

ECF 13.

Plaintiff alleges that on September 21, 2024, after an argument with his girlfriend, Milwaukee police officers arrived on scene. ECF 1 at 2. He claims that he is hearing impaired, so he called his landlord to assist with translation. *Id*. at 2-3. Plaintiff alleges that, while he cannot hear, he can read lips. *Id*. at 3. Plaintiff also claims that while he was on the phone, Officer Jimenez-Gonzalez attempted to reach for his phone and thought Plaintiff was lying about his disability. *Id*. Further, Plaintiff alleges that Officer Jimenez-Gonzalez and Officer Lewis struck him in the face,

3

and that Officer Cruz twisted Plaintiff's arms behind his back. *Id*. Plaintiff's complaint also alleges that prior to handcuffing Plaintiff, unnamed police officers slammed his head on the concrete and punched him in the face several times, causing his eye to swell shut. *Id*.

Plaintiff further claims that later on September 21, 2024, unnamed booking officers violated his rights by failing to provide him with an ASL interpreter despite being informed that he was hearing impaired. *Id*.

Plaintiff also alleges that Officer Cruz and Officer Max Cziske used excessive force on September 22, 2024, while trying to execute a buccal swab search warrant. ECF 1 at 4. After Officer Cruz and Officer Cziske read "some paper," Plaintiff asserts that Officer Cruz and Officer Cziske "both tried forcing the swab stick in my mouth[,] both officers were punching me and choking me while I couldn't breathe [.]" *Id*. Plaintiff claims that as a result of the injuries he sustained during the attempted buccal swab retrieval, he had to be transferred to St. Luke's Hospital for treatment. *Id*.

Plaintiff alleges that his rights under the Rehabilitation Act were also violated on September 22, 2024, while trying to retrieve a buccal swab from Plaintiff, Officer Cruz and Officer Max Cziske refused Plaintiff's three requests for an American Sign Language Interpreter and multiple requests for an attorney. ECF 1 at 4. He further asserts that Officer Cruz and Officer Cziske read "some paper to me" and he did not understand what they were reading to him because he was not provided an interpreter. *Id*. He states that he was unable to read their lips because of an eye injury he sustained during the incident on September 21, 2024. *Id*.

## FACTS

Officer Jimenez Gonzalez's, Officer Cruz's and Officer Lewis's body camera video shows the officers' interactions with Plaintiff on September 21, 2024. At approximately 10:42PM on

4

September 21, 2024, Officer Jimenez- Gonzalez arrived on scene. Def. Ex. 1 at 0:25. Officer Jimenez Gonzalez immediately sees Plaintiff standing outside of the subject residence. *Id*. at 0:25-0:30. Officer Jimenez-Gonzalez verbally instructs Plaintiff to have a seat and to not touch the vehicle located in front of him. *Id*. at 0:30-0:40. Plaintiff backs away from the car and informs Officer Jimenez-Gonzalez that it is his car. *Id*. Officer Jimenez Gonzalez's partner then asks Plaintiff if he called the police to which Plaintiff responds "Me? No!" *Id*. at 0:48-0:50. Officer Jimenez- Gonzalez again instructs Plaintiff to have a seat and Plaintiff complies and sits on the stairs in front of the residence. *Id*. at 0:50-0:54.

Officer Jimenez-Gonzalez's partner then attempts to speak with Plaintiff while he is standing behind and off to the side of Plaintiff. *Id*. at 1:10-1:19. Plaintiff informs Officer Jimenez-Gonzalez and his partner that he has a hearing problem. *Id*. Upon learning of his disability, Officer Jimenez Gonzalez immediately informs Plaintiff that he will speak with Plaintiff while standing directly in front of him; Plaintiff does not protest to this arrangement or indicate that this accommodation will not suffice. *Id* at 1:10-1:22. Officer Jimenez Gonzalez proceeds to ask Plaintiff several questions regarding who called 911 from this location, and Plaintiff appropriately responds to all questions. *Id*. at 1:22-1:40.

Plaintiff then calls an individual he identifies as his landlord and asks him to confirm for the officers that the subject residence was his house. *Id*. at 2:04-2:23. While the "landlord" is on the phone, Officer Jimenez Gonzalez explains to the Plaintiff that he and his partner still have to conduct an investigation into the phone call. *Id*. Officer Jimenez Gonzalez again explains to Plaintiff that he and his partner have to investigate the call; Plaintiff indicates that he understands by giving two thumbs up. *Id*. at 3:30-3:40. Plaintiff then agrees to allow the officers to conduct a welfare check in his home and opens the rear door of the residence. *Id*. at 4:20-4:48.

While still standing towards the back of the house, Officer Jimenez- Gonzalez asks Plaintiff to explain why he thinks the officers were called to his residence. *Id*. at 5:20-6:00. During the conversation, Officer Jimenez Gonzalez states "I can understand you being upset." *Id*. at 5:55. Plaintiff states "Huh?" letting Officer Jimenez-Gonzalez know that he did not hear him; Officer Jimenez-Gonzalez immediately repeats his statement. *Id.* at 5:56-5:57. Plaintiff then voluntarily shows Officer Jimenez Gonzalez text messages on his phone. *Id*. at 6:18-14:47. Plaintiff also continues to engage in a conversation with Officer Jimenez Gonzalez regarding his relationship with his girlfriend. *Id*. at 7:50-9:00. While showing Plaintiff the messages, Plaintiff answers a phone call, has a conversation with the individual without notic *id.* at 14:51-15:05, and then continues to show messages to Officer Jimenez-Gonzalez. *Id.* at 15:12-16:45.

During Plaintiff's and Officer Jimenez- Gonzalez's conversation, Officer Cruz and Officer Lewis walk to the back of the residence and then, after Plaintiff re-opens the back door of the residence, enter the residence to conduct a welfare check. *Id.* at 15:56-16:04, 16:47-17:14; Def. Ex. 2 at 9:50, 10:25, 11:10-11:15, 11:26. Officer Lewis exits the residence and observes Plaintiff voluntarily showing his phone to Officer Jimenez Gonzalez. Def. Ex. 2 at 13:33-13:38.

In the middle of their conversation, Plaintiff begins having a phone conversation with an individual he identifies as his little brother. Def. Ex. 1 at 19:27-19:46. Again, Plaintiff does not appear to have any issues with hearing his brother during the phone conversation. *Id.* Officer Jimenez- Gonzalez calmly asks Plaintiff to hang up the call. *Id*. Plaintiff ignores Officer Jimenez-Gonzalez's request and puts his phone to his ear to continue the phone conversation. *Id*. at 19:47-20:04. Plaintiff explains that his brother wants to hear what is occurring. *Id*. at 20:05-20:08. Plaintiff continues to ignore Officer Jimenez Gonzalez's requests to hang up the phone due to

6

officer safety and continues to speak with his brother on the phone. *Id*. at 20:09-20:14, 20:15-20:17; Def. Ex. 2 at 14:24-14:50.

Plaintiff begins to get upset (Def. Ex. 1 at 20:18) and instructs his brother to travel to his residence. *Id*. at 20:20-20:24. At this point, Officer Jimenez Gonzalez calmly grabs Plaintiff's phone to discontinue the phone calls. *Id*. at 20:27-20:29. Due to Plaintiff's failure to comply with Officer Jimenez-Gonzalez's requests to hang up the phone, Officer Jimenez-Gonzalez informs Plaintiff that he is going to be detained. *Id*. at 20:30-20:44. Plaintiff then claims that he could not hear Officer Jimenez Gonzalez's instructions. *Id*. at 20:34-20:38.

As Officer Jimenez Gonzalez attempts to detain Plaintiff along with Officer Lewis, other Milwaukee police officers assist and begin telling Plaintiff to not tense up. *Id*. at 20:45; Def. Ex. 2 at 14:50-15:06. Plaintiff then runs from the officers and refuses to get on the ground for nearly 20 seconds. Def. Ex. 1 at 20:46-21:06; Def. Ex. 2 at 15:06-15:16. As Plaintiff flees and resists officers, Officer Lewis's body camera is knocked off his person, but continues capturing audio. Def. Ex. 2 at 15:18. The audio captured indicates a struggle between officers and Plaintiff as Plaintiff continues to resist arrest and attempts to flee. Multiple officers yell at Plaintiff to "Get on the ground!" and "Get on the fucking ground!" and warning him that he was going to be tased if he continued to resist. *Id.* at 15:23-15:27. Officer Cruz can be heard yelling at Plaintiff to put his arms behind his back multiple times before he complies. Def. Ex. 1 at 21:10-21:20; Def. Ex. 2 at 15:31-40. Officers then call for medical to respond. Def. Ex. 1 at 21:56-22:02; Def. Ex. 3 at 0:37-0:43. Plaintiff again claims that he cannot hear to which Officer Jimenez-Gonzalez responds "We were talking fine. You and me were talking fine." Def. Ex. 1 at 23:00-23:03.

Plaintiff's interactions with Officer Cruz and Officer Cziske on September 22, 2024 are captured on Officer Cziske's body worn camera video and September 22, 2024 interview room

7

video. Officer Cziske's body worn camera video begins with Officer Cziske and Officer Cruz escorting Plaintiff from a holding cell to an interview room. Def. Ex. 4 at 0:00-2:40. From the beginning of their interaction, Plaintiff is immediately uncooperative, repeatedly stating "I am not doing it." *Id*. at 1:00-1:08. Upon arriving at the interview room, Officer Cziske verbally notes that the "subject is already uncooperative." *Id*. at 2:38-2:40. As Plaintiff is being transported to the interview room, Plaintiff is asking questions and actively participating in a conversation with the two officers. *Id*. at 0:00-2:40.

Once Plaintiff is in the interview room, Officer Cziske begins reading a buccal swab search warrant that was issued by a Milwaukee County Court Commissioner Rose M. Barilla on September 22, 2024. *Id*. at 4:10-5:10; 5:22-6:45. The search warrant explicitly states that officers were permitted to take reasonable physical measures in the event that Plaintiff does not comply with the buccal swab procedure. *Id*. at 6:04-6:14. As Officer Cziske is reading the search warrant, Plaintiff states "I cannot fucking hear." *Id*. at 5:10-5:12. Officer Cruz, who was on scene with Plaintiff on September 21, 2024, replies "You were talking to us fine yesterday." *Id* at 5:15-5:17. Officer Cziske then further clarifies the purpose of the search warrant by explaining "This authorizes us to take your DNA through a buccal swab." *Id*. at 6:46- 6:50. Plaintiff makes multiple requests for a lawyer. *Id*. at 7:35-7:40. Officer Cziske explains that he and Officer Cruz were not there to ask questions about the case or investigation. *Id*. at 7:35-7:46. Officer Cruz also offers Plaintiff the opportunity to read the search warrant; Plaintiff refuses. *Id.* at 8:36-40; Def. Ex. 5 at 21:31-21:51.

As the officers begin to prepare to take the swab, Plaintiff, despite alleging that he was unable to understand the search warrant, purses his lips, seemingly indicating that he was not going to comply with Officer Cziske's and Officer Cruz's instructions and their attempt to take a buccal

swab. Def. Ex. 4 at 9:35-9:54; 10:15-10:26. Both Officer Cziske and Officer Cruz remind Plaintiff that they can use reasonable physical measures if Plaintiff refuses to comply with the search warrant and the buccal swab. *Id.* at 10:27-11:00. Because of Plaintiff's continued refusal to comply with the buccal swab, Officer Cziske and Officer Cruz decide to bring Plaintiff to the ground. *Id.* at 10:57-11:04. Plaintiff begins to yell. *Id.* at 11:04-11:11.

Plaintiff continues to refuse to open his mouth for the swab and Officer Cziske and Officer Cruz are forced to try to open his mouth. *Id.* at 11:19-11:27. Officer Cruz is able to insert a swab into Plaintiff's mouth. *Id.* at 11:27-28. Plaintiff then turns his head towards Officer Cruz's arm and bites him. *Id.* at 11:28-11:30; Def. Ex. 5 at 24:26. In response, Officer Cruz strikes Plaintiff two times. Def. Ex. 5 at 24:26- 24:28. Plaintiff continues to refuse to open his mouth. Def. Ex. 4. at 11:30-11:59. Officer Cruz is able to insert another swab into Plaintiff's mouth. *Id.* at 12:00-12:02. Plaintiff then bites the end of the swab, again preventing Officer Cruz from completing the buccal swab. *Id.* at 12:02-12:19. Officer Cruz makes a third attempt to swab Plaintiff's cheek. *Id.* at 12:34-12:36. Plaintiff bites the third swab, while moving his head back and forth. *Id.* at 12:36-12:54. Plaintiff bites off the end of the swab and swallows it. *Id.* at 12:54-12:55. After swallowing the end of the swab, Plaintiff begins to cough and appears to be choking. *Id.* at 13:00-13:03. Officers immediately turn Plaintiff on his side and pat his back, in an effort to help him. *Id.* at 13:06-13:23. Officer Cziske asks Plaintiff if he is having trouble breathing; Plaintiff, who is breathing, does not respond. *Id.* at 13:30-13:39. Officer Cziske then calls for medical assistance. *Id.* at 13:42-13:56. Plaintiff begins yelling. *Id.* at 13:56- 14:43. In response, Officer Cziske again explains the contents of the search warrant, reminds Plaintiff that he had the opportunity to read the search warrant, that Plaintiff will receive a copy of the search warrant, that he does not have a right to an attorney during the execution of the search warrant and that he and Officer Cruz were permitted to use

9

reasonable physical measures to obtain the swab. *Id*. at 14:44-15:10. Officer Cruz makes another attempt to complete the swab, but Plaintiff continues to attempt to bite the swab and resist. *Id.* at 15:22-15:40. Plaintiff is responsive the entirety of the interaction. *See* Def. Ex 4.

**ARGUMENT**

**I.     Plaintiff has failed to articulate facts necessary to state a violation of the Rehabilitation Act against Officers Jimenez-Gonzalez, Officer Cruz, Officer Lewis and Officer Cziske.**

As outlined below, there are three elements that must be proven to establish a Rehabilitation Act violation. Based on the events captured on the Defendant officers' body worn camera video and the interview room video, it is clear that the Plaintiff has failed to articulate the facts necessary to meet any of the elements required to assert a Rehabilitation Act violation.

*A.   Legal Standard- Rehabilitation Act*

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff must prove the following elements to establish an ADA violation: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).[1]

An individual qualifies as disabled if she has a physical or mental impairment that substantially limits one or more of the major life activities, if she has a record of such an

---

[1] Claims under Section 504 of the Rehabilitation Act are treated as "functionally identical" as Title II claims. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). For the purposes of this Brief, the ADA law cited in this brief refers to Plaintiff's Rehabilitation Act claim.

10

impairment, or if she is regarded as having such an impairment.  42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).  An impairment "substantially limits" a major life activity if it significantly restricts "the condition, manner or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population.  *Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 961 (7th Cir. 1996).  Courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 29 C.F.R. § 1613.702(c). Major life activities "refer to those activities that are of central importance to daily life."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

To prove an individual was discriminated against or denied benefits or services because of her disability, a plaintiff must show the defendant did one of the following: 1) intentionally acted on the basis of the disability; 2) the defendant refused to provide a reasonable modification; or 3) the defendant's rule disproportionally impacts disabled people.  *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).  "Intentional" action includes "deliberate indifference," which requires "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  *Lacy v. Cook County*, 897 F.3d 847, 863 (7th Cir. 2018).  A plaintiff must prove "there was an official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf and also had actual knowledge of discrimination in the recipient's programs [but] fail[ed] adequately to respond."  *Royer v. Elkhart City*, 2022 WL 17600377 (N.D. Ind. 2022).

B. *Officer Jimenez Gonzalez, Officer Cruz and Officer Lewis did not violate Plaintiff's rights under the Rehabilitation Act on September 21, 2024.*

11

Plaintiff claims that, on September 21, 2024, while he was on the phone, Officer Jimenez-Gonzalez attempted to reach for his phone and thought Plaintiff was lying about his disability. ECF 1 at 3. Throughout his interactions with Milwaukee police officers on September 21, 2024, Plaintiff never requests the assistance of an American Sign Language (ASL) Interpreter and informs Officer Jimenez- Gonzalez that he can read lips. Def. Ex. 1 at 1:10-1:22. Officer Jimenez-Gonzalez immediately makes accommodations so that Plaintiff can understand him. *Id*. Not once does Officer Jimenez-Gonzalez tell Plaintiff that he thinks he is lying about his disability. *See* Def. Ex. 1. Throughout their interaction, if Plaintiff indicated that he did not understand something that Officer Jimenez Gonzalez stated, Officer Jimenez Gonzalez immediately repeated his last statement. *Id*. at 5:55-5:57.

Besides his assertions within in his complaint and to the Defendant officers that he is hearing impaired, Plaintiff has not established that he is hearing impaired nor the extent of his hearing loss. However, for the sake of argument in this brief, Defendants will concede that Plaintiff is hearing impaired to an unknown extent.

Plaintiff was not denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity due to his disability. To prove that he was denied services and discriminated against, Plaintiff has to prove Defendants acted intentionally on the basis of his disability, Defendants refused to provide reasonable accommodations or the Defendants' rule disproportionately impacts disabled people.

Since a rule is not at issue during the September 21, 2024 interaction, Defendants will only discuss whether Officer Jimenez Gonzalez failed to provide a reasonable accommodation or whether Defendants' actions were intentional or deliberately indifferent towards disabled people. As discussed previously in this subsection, as soon as Plaintiff disclosed that he had a "hearing

12

problem," Officer Jimenez Gonzalez immediately accommodated Plaintiff by standing immediately in front of Plaintiff and confirming that Plaintiff could hear him. Def. Ex. 1 at 1:10-1:22. At no point did Plaintiff request additional accommodations, like an ASL interpreter, or indicate that Officer Jimenez- Gonzalez's accommodations were no longer sufficient. *See* Def. Ex. 1. In fact, Plaintiff and Officer Jimenez-Gonzalez conversed one-on-one with no issues for approximately 13 minutes and Officer Jimenez Gonzalez repeated himself when necessary. *Id.* at 5:20-17:14. Also, notably, Plaintiff has multiple phone conversations in front of Officer Jimenez-Gonzalez and other Milwaukee police officers demonstrating that Plaintiff's hearing impairment did not prevent him from corresponding even without the ability to read lips. Def. Ex. 1 at 2:04-2:23; 19:27-19:46   Throughout their interaction, there is no indication that Officer Jimenez Gonzalez was deliberately indifferent towards Plaintiff because of his disability and did anything but ensure that Plaintiff understood what was occurring and could hear what was being asked of him. After Plaintiff first disclosed his disability to the responding officers, the only times that Plaintiff stated that he could not hear was when he was being detained. Def. Ex. 1 at 23:00-23:03.

Officer Lewis and Officer Cruz did not interact with Plaintiff in such a way that gave them the opportunity to provide accommodate his disability or discriminate against him due to his disability. *See* Def. Ex. 1.Their only close interaction with Plaintiff was when Plaintiff attempted to flee and resisted arrest. *Id.*

Plaintiff has failed to establish the elements necessary for a Rehabilitation Act violation against Officer Jimenez-Gonzalez, Officer Cruz and Officer Lewis and should be dismissed .

C. *Officer Cziske and Officer Cruz did not violate Plaintiff's rights under the Rehabilitation Act on September 22, 2024.*

Plaintiff alleges that his rights under the Rehabilitation Act were violated on September 22, 2024, while trying to retrieve a buccal swab from Plaintiff, Officer Cruz and Officer Max

13

Cziske refused Plaintiff's three requests for an American Sign Language Interpreter and multiple requests for an attorney. ECF 1 at 4. He further asserts that Officer Cruz and Officer Cziske read "some paper to me" and he did not understand what they were reading to him because he was not provided an interpreter. *Id*. He states that he was unable to read their lips because of an eye injury he sustained during the incident on September 21, 2024. *Id.*

Officer Cziske's body worn camera video and the interview room video contradict Plaintiff's version of events. First, it is important to note that Officer Cruz was present on scene on September 21, 2024 and, as discussed in the prior subsection, observed Plaintiff adequately communicate with other Milwaukee police officers without an American Sign Language (ASL) interpreter. Second, while Plaintiff claims that he requested an ASL interpreter three times during his interaction with Officer Cziske and Officer Cruz on September 22, 2024 (ECF 1 at 4), nowhere in the body worn camera video or the interview room video is that recorded. *See* Def. Ex. 4 and Def. Ex. 5. The only thing that Plaintiff requests is an attorney. Def. Ex. 4 at 7:35-7:40.

Finally, Plaintiff alleges that he did not understand the search warrant as it was read to him because he was not provided with an ASL interpreter. ECF 1 at 4. He further states that he was unable to read their lips because of an eye injury he sustained during the incident on September 21, 2024. *Id*. Plaintiff did not request an ASL interpreter and actively participated in conversation with the officers as he was being led to the interview room, leading the officers to reasonably believe that Plaintiff could understand what was being said. Def. Ex 4 at 0:00-2:40. As soon as Plaintiff entered the interview room, his hearing appeared to worsen. After informing officers that he did not understand the search warrant, Plaintiff was given the opportunity to read the search warrant; he refused. *Id.* at 8:36-40; Def. Ex. 5 at 21:31-21:51. Additionally, although Plaintiff asserts that he did not understand what was occurring because he could not hear what Officer

14

Cziske and Officer Cruz were saying, his actions say otherwise: as officers escorted Plaintiff from the holding cell to the interview room, Plaintiff repeatedly stated "I am not doing it" (Def. Ex. 4 at 1:00-1:08); and after the search warrant was read to him and Officer Cziske and Officer Cruz began preparing the swab, Plaintiff immediately pursed his lips. *Id.* at 9:35-9:54; 10:15-10:26.

Again, for the sake of the argument in this brief, Defendants concede that Plaintiff is hearing impaired to an unknown extent. Plaintiff was not denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity due to his disability.

When determining whether Plaintiff was denied the benefits of services and otherwise discriminated against due to his disability, a rule is not at issue so a discussion as to whether a rule disproportionately impacted disabled people is not necessary. When Plaintiff indicated that he did not understand the search warrant, Officer Cruz immediately offered Plaintiff the reasonable accommodation to read the search warrant. Def. Ex. 4 at 8:36-40; Def. Ex. 5 at 21:31-21:51. Plaintiff's refusal to take advantage of the opportunity to read the warrant does not negate Defendants' offer of a reasonable accommodation, but should negate any claim Plaintiff may make that he was not provided with a reasonable accommodation. Finally, given that Plaintiff was immediately offered a reasonable accommodation, Plaintiff cannot prove that Officer Cziske and Officer Cruz acted with any malintent or was deliberately indifferent towards disabled people.

Officer Cziske's and Officer Cruz's actions on September 22, 2024, were not in violation of the Rehabilitation Act and should be dismissed.

## II. Plaintiff has failed to articulate the facts necessary to state a claim for excessive force against Officers Jimenez Gonzalez, Officer Cruz, Officer Lewis and Officer Cziske.

As discussed in greater detail below, Officer Jimenez- Gonzalez's, Officer Cruz's, Officer Lewis', and Officer Cziske's actions were objectively reasonable on September 21, 2024 and

15

September 22, 2024. Plaintiff's excessive force claims exclude Plaintiff's actions which ultimately led to the reasonable force used by Defendants. Defendants' body worn cameras and the interview room video contradict Plaintiff's version of events. Plaintiff's excessive force claims should be dismissed.

A. *Legal Standard- Excessive Force.*

All excessive force claims against law enforcement officers are analyzed under the Fourth Amendment's "objective reasonableness" standard. *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir. 1992). Furthermore, "[t]he fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter." *Scott v. Edinberg*, 346 F.3d 752, 756 (7th Cir. 2003) (citing *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997). In evaluating the reasonableness of a use of force, courts must consider officer safety concerns and whether the suspect cooperates or resists. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The United States Supreme Court has held that that claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's "objective reasonable standard," not under substantive due process principles. *Graham v. Connor*, 490 U.S., at 388, 394, 109 S.Ct. 1865 (1989). Because "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation," *id.*, at 397, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. *Id.*, at 396. The incident must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Turner v. City of Champaign*, 979 F.3d 563 565 (7th Cir. 2020) (citation omitted). Reasonableness requires balancing the "nature and quality of the intrusion

on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott v. Harris*, 550 U.S. 372, 383 (2007).

*Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001).

**B. *Officers Cruz, Lewis and Jimenez-Gonzalez used reasonable force against Plaintiff on September 21, 2024 and did not violate Plaintiff's constitutional rights.***

Here, when compared to the actual body camera video, the Plaintiff's allegations lack any merit. Plaintiff alleges that, on September 21, 2024 Officer Jimenez-Gonzalez and Officer Lewis struck him in the face, and Officer Cruz twisted Plaintiff's arms behind his back. ECF 1 at 2-3. After reviewing the body camera footage of the three officers and considering the factors outlined in *Graham*, it is clear that Plaintiff fails to state a plausible claim.

In his complaint, Plaintiff conveniently excludes the fact that the reason Plaintiff was struck and his arms were forced behind his back was because he attempted to flee from Milwaukee police officers and resisted being detained for approximately 20 seconds. Def. Ex. 1 at 20:46-21:06; Def. Ex. 2 at 15:06-15:16. For the majority of Plaintiff's interaction with Milwaukee police officers no force was needed because he did not pose a threat to the safety of officers and was not actively resisting arrest or attempting to evade arrest. It was not until Plaintiff attempted to flee and resisted Officer Jimenez- Gonzalez's, Officer Cruz's and Officer Lewis's attempt to detain him for nearly twenty seconds that force was used. Plaintiff resisted to the point that Officer Lewis's body camera

17

was knocked off his person, Officer Jimenez-Gonzalez lost his glasses, and three officers were required to bring Plaintiff to the ground. When considering all of the circumstances, not just the ones Plaintiff selectively included in his complaint, it is clear that objectively reasonable force was used.

Defendants Cruz, Lewis and Jimenez-Gonzalez did not use excessive force against Plaintiff and Plaintiff's claims should be dismissed.

### C. Officers Cruz and Cziske used reasonable force against Plaintiff on September 22, 2024 and did not violate Plaintiff's constitutional rights.

As with the excessive force claims against Officer Jimenez- Gonzalez, Officer Cruz and Officer Lewis, Plaintiff's allegations against Officer Cruz and Officer Cziske are without merit. After reviewing Officer Cziske's body camera footage and the interview room footage and when considering the factors outlined in *Graham*, it is clear that Officer Cruz's and Officer Cziske's actions on September 22, 2024 were objectively reasonable.

Plaintiff alleges that both officers were punching him and choking him while he couldn't breathe. ECF 1 at 4. Plaintiff further alleges that, due to the force used against him, he had to be transported to St. Luke's Hospital. *Id*. Officer Cziske's body worn camera video and the interview room video contradict Plaintiff's version of events.

Plaintiff, again, conveniently excludes his actions from his complaint which led to the use of force on September 22, 2024. Officer Cruz did not punch Plaintiff until Plaintiff bit him in an effort to avoid the buccal swab. Def. Ex. 4 at 11:28-11:30; Def. Ex. 5 at 24:26. Officer Cruz then punches Plaintiff only two times to stop him from biting. Def. Ex. 5 at 24:26- 24:28. It is true that Plaintiff choked, but he was not choked by Officer Cruz or Officer Cziske. Plaintiff, again in an effort to avoid the buccal swab, bit off the end of the swab, swallowed it and choked on it. Def.

18

Ex. 4 at 12:54-13:03. Having to be transported and treated at St. Luke's Hospital was due to Plaintiff's own actions, not because of any actions taken by Officer Cruz or Officer Cziske.

When considering the entirety of the circumstances, and not just the facts presented by Plaintiff in his complaint, any force that Officer Cziske and Officer Cruz used was objectively reasonable given the entirety of the circumstances. Therefore, Plaintiff's claims of excessive force against Officer Cziske and Officer Cruz should be dismissed.

### III. Plaintiff has failed to articulate facts necessary to state a claim of failure to intervene against Officer Gutowski.

A police officer, whether supervisory or nonsupervisory, who is present and fails to intervene to prevent other officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reasonable opportunity to intervene to prevent harm from occurring and if the officer had reason to know that excessive force was being used, that citizen has been unjustifiably arrested, or that any constitutional violation has been committed by a law enforcement official. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)(citations omitted).

Within his complaint, Plaintiff alleges that "A qualify[sic] interpreter was provided for me, who had confirmed to officers that I was hearing impaired and I will like to proceed with a excessive use of force against all officers and a failure to intervene excessive use of force claim against all officers." ECF 1, p. 4. This is the only mention of a claim for failure to intervene. There is no mention within the complaint of which of the five named Defendants the claim is against. "The plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). While the Court assumes, via the process of elimination, that the failure to intervene claim is against Officer Giles Gutowski (ECF 13, p. 7), the Defendant has failed to make such a specification in his complaint

19

and, thus, has failed to provide Defendants with enough details to appropriately respond and defend against Plaintiff's allegations against him.

Even if a defendant was properly named and a claim was properly stated, for the reasons discussed in subsection B, Officer Cruz and Officer Cziske did not violate Plaintiff's constitutional rights on September 22, 2024. Without an infringement of Plaintiff's constitutional rights or other harm, a duty did not exist for Officer Gutowski or any other Milwaukee police officer to intervene.

**IV.     Plaintiff has failed to articulate facts necessary to state a claim against unnamed officers.**

In addition to Plaintiff's excessive force and Rehabilitation Act claims against Officers Jimenez- Gonzalez, Officer Cruz, Officer Lewis and Officer Cziske, Plaintiff makes additional excessive force and Rehabilitation Act claims against unnamed police officers. ECF 1 at 3. However, Plaintiff fails to articulate the facts necessary for him to properly state a claim against these unnamed officers.

Plaintiff makes two claims against unnamed officers that allegedly occurred on September 21, 2024. .Plaintiff claims that unnamed police officers slammed his head on the concrete and punched him in the face several times, causing his eye to swell shut. *Id*. Plaintiff also claims that unnamed booking officers violated his rights by failing to provide him with an ASL interpreter despite being informed that he was hearing impaired. *Id*.

"The plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). The Plaintiff has failed to specify in his complaint which of the five Defendants these claims are against and, thus, has failed to provide Defendants with enough details to appropriately respond and

defend against Plaintiff's allegations against them. The Defendants should not have to guess as to which Defendant the claim is against.

**V.      The Defendant is entitled to qualified immunity, because a reasonable official would find the conduct at issue lawful.**

If this Court finds that Plaintiff properly stated a claim and that the Defendant officers violated Plaintiff's Fourth Amendment rights by using excessive force, violating the Rehabilitation Act, Plaintiff's claims should still be dismissed because Defendants are entitled to qualified immunity. Qualified immunity exists to protect public servants from liability for reasonable mistakes made while performing public duties. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The defense of qualified immunity shields "government officials performing discretionary functions…from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. (Slip op., at 4-5); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(citations and footnote omitted). The principle behind the doctrine is that if the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he or she fairly be said to know that the law forbade conduct not previously identified as unlawful. *Id.* The Seventh Circuit has noted that "[w]hat is important, in the final analysis, is 'whether the legal norms governing [the government official's] behavior were clearly established' at the time of the challenged actions." *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991)(citations omitted). In fact, existing precedent must have placed the statutory or constitutional question beyond debate. (*Mullenix*, Slip op. at 5.)

The question of whether qualified immunity applies is made up of three analytic components: (1) the identification of the specific right allegedly violated, (2) the determination of

whether that right was so "clearly established" as to alert a reasonable official to its constitutional parameters, and (3) the ultimate determination of whether a reasonable official could have believed lawful the particular conduct at issue. *See Gooden v. Howard County,* 917 F.2d 1355, 1361 (4th Cir. 1990); *Burns v. Loranger*, 907 F.2d 233, 235-36 (1st Cir. 1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987). Courts have the discretion to resolve a qualified immunity challenge at the outset by utilizing the "clearly established" prong without first having to decide whether there was any underlying constitutional violation. *Camreta v. Greene*, 563 U.S. 692, 707, 131 S. Ct. 2020, 2032, 179 L. Ed. 2d 1118 (2011). In fact, the court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit. *Id,* 563 U.S. at 705-706.

In revisiting the defense of qualified immunity, the United States Supreme Court has held that, even assuming that a constitutional right may have been violated, a lower court must review the second question whether the right was clearly established in a case-specific manner. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 148 L.Ed. 2d 454 (2001). The Court held that this inquiry, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable… The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted… *Id*., 121 S.Ct. at 2156-57(citations omitted.)

Furthermore, the Court also held that even if the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense. *Id.* at 2158. When considering the defense of qualified immunity, the Court must consider only the facts that were

knowable to the defendant officer. *White v. Pauly*, 580 U.S. (2017) (Slip op., at 3); See also *Kingsley v. Hendrickson*, 576 U.S., (2015)(Slip op., at 9).

The Seventh Circuit has stated with respect to qualified immunity that it is "designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, slip. op. at 5; *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). It should be applied unless "it has been authoritatively decided that certain conduct is forbidden." *Upton,* 930 F.2d at 1212 (quoting *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987). Courts have maintained the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *White v. Pauly,* 580 U.S. (Slip op. at 6, citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Qualified immunity thus provides officers with an additional layer of protection against civil liability. *Hughes*, 880 F.2d at 970. Also, the right claimed must be so clearly established that it is "sufficiently clear that EVERY reasonable official would have understood that what he is doing violates that right." *Mullenix*, slip op. at p. 4, emphasis added.

In *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), the United States Supreme Court stressed the importance of resolving immunity questions at the earliest possible stage of litigation. *Id.*

The Defendant officers respectfully refers the Court to the above discussion, and the relevant case law cited in each argument section, which establishes that they were not clearly put on notice that using reasonable force to arrest Plaintiff and conduct a buccal swap authorized by a search warrant, communicating with a responsive individual and not intervening when a constitutional violation did not occur was unlawful. Rather, as established by the law cited in each argument section above, Defendants' challenged actions were consistent with relevant case law, and therefore within constitutional parameters. A reasonable police officer could have believed

23

lawful the particular conduct at issue. Therefore, Defendants are entitled to the protection of qualified immunity for all federal claims raised against him.

## CONCLUSION

For these reasons stated above, Defendants respectfully move this court to dismiss Plaintiff's claims.

Dated and signed at Milwaukee, Wisconsin this 6th day of July 2026.

EVAN GOYKE
City Attorney

s/ Meghan McCabe
MEGHAN MCCABE
Assistant City Attorney
State Bar No. 1132740
JOSHUA B. CRONIN
Assistant City Attorney
State Bar No. 1064324
*Attorneys for Defendants*

**P.O. ADDRESS:**
200 East Wells Street
City Hall 800
Milwaukee, WI 53202
414-286-2601 – Telephone
414-286-8550 – Facsimile
Email: mmccab@milwaukee.gov
jbcronin@milwaukee.gov

1032-2025-1058:298378

24